Opinion issued May 19, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00492-CV

———————————

Roger Burt Williams and Michelle S.
Williams,
Appellants

V.

Richard
Dardenne and Marilyn Dardenne, Appellees



 



 

On Appeal from the 55th District
Court

Harris County, Texas



Trial Court Case No. 0901415

 



 

O P I N I O N

          Roger
and Michelle Williams appeal from a judgment based on a jury verdict in favor
of Richard and Marilyn Dardenne, awarding the Dardennes damages for foundation
repairs to a house the Dardennes purchased from the Williamses. In two issues,
the Williamses argue that (1) the Dardennes’ claims fail as a matter of law on
the basis of an “as is” provision in the parties’ sale contract and the Dardennes’
independent inspection of the home before the sale and (2) the award of attorney’s
fees is not supported by sufficient evidence. We reverse and render a
take-nothing judgment on the basis of the parties’
contract and therefore do not reach the second issue.

Background

The Dardennes purchased a home from
the Williamses in November 2007. They used the standard form residential resale
contract promulgated by the Texas Real Estate Commission (the “TREC”). It
contains a provision entitled, “Acceptance of Property Condition,” which
states:

Buyer accepts Property in
its present condition; provided that Seller, at Seller’s expense, shall
complete the following specific repairs and treatments: __________________.

 

In the blank space provided, the parties typed in
“Termite if necessary.” The contract does not contain a merger clause or
disclaimer of reliance on oral representations. The Dardennes also signed an
“as is” agreement with their lender, in which they represented that they had
inspected the property and accepted it in its “as is” condition, without any
reservation. 

The sale contract contains a
checked box indicating the Dardennes received a “Seller’s Disclosure of
Property Condition” from the Williamses, pursuant to Section 5.008 of the Texas
Property Code. See Tex. Prop. Code Ann. § 5.008 (West
Supp. 2010). The seller’s disclosure contains a section that asks if the seller
is aware of any defects in the foundation. The Williamses checked the “no” box
but also wrote in a note: “repaired.” In the section permitting an explanation,
the Williamses wrote: “Foundation has been repaired prior to our ownership.” This
reference is to foundation underpinning performed by previous owners in 1990,
and these repairs were disclosed to the Dardennes.

The disclosure also asks the seller
to list “any written inspection reports” the seller received within the last
four years.[1] The Williamses
identified three inspection reports: one performed by “R. Michael Gray, PE” in
2005, one performed by “Sherlock Spec” in 2006, and one performed by “AU Around
Pest Control” also in 2006. The Williamses did not list a document prepared by
Knight Engineering Services in 2006, which they received and reviewed but did
not keep. 

Two of the reports that the
Williamses listed, the 2005 Gary report and the 2006 Sherlock report, address
the home’s foundation. The 2005 Gary report is a fifty-eight-page document
reflecting a home inspection performed by registered structural engineer Richard
Michael Gray for a previous prospective buyer. The form of the report includes
a checklist for various inspections. Gray checked the box on the form showing
he had inspected the foundation, but he did not check the box indicating that
the foundation was not functioning or needed repairs. With respect to the
foundation, Gray concluded that the house “does exhibit damage due to
foundation” but the damage was “cosmetic” and the foundation was performing
“serviceably . . . [within] an acceptable range of structural performance given
the apparent age, construction and location of the structure.” Gray further
stated that the “Finish Floor Elevation Profiles . . . are consistent with
normal foundation surface geometry” but that the “tilt has created a floor that
is much less level than what we normally find. I cannot determine the cause of
the levelness issue but it is likely to be due to a combination of initial
as-constructed out-of-levelness, tilt due to expansive soil movement and
possibly tilt due to expansive soil movement and possibly tilt due to the previous
foundation underpinning.” Gray determined that neither further foundation
underpinning nor concrete repairs were necessary at that time. The Dardennes
received and reviewed the Gray report before closing on the property. The tilt
of the floor was plainly visible to the Dardennes during their multiple visits
to the home before the closing. 

The 2006 Sherlock report is a
twenty-page home inspection performed by Chris Brode of the TREC, who is not a
structural engineer. Brode used portions of the same form used by Gray. Unlike Gray’s
report in 2005, Brode checked the box on the report form stating that the
home’s foundation was not functioning or needed repairs. Brode stated that the
slab had experienced “signs of settlement as evidenced by cracks in the grade
beam, garage floor, brick veneer and sheetrock” and that “[f]oundation cracking”
was observed, which implied that “structural movement of the building has
occurred.” Brode also noted the previous foundation repairs. Marilyn Dardennes gave
conflicting testimony on whether she and her husband received a copy of the
Sherlock report, testifying at one point that she could not remember and at
another point that they did not receive it. But she admitted that they had
access to the Sherlock report before the closing and had not reviewed it. It
was listed on the seller’s disclosure.

The document that the Williamses
did not list, prepared by Knight Engineering in 2006, is a two-page letter accompanied
by two “plates” that showed repairs the Williamses could hire Knight
Engineering to perform. The Williamses consider this letter to be a bid to
perform foundation work on the property; the Dardennes consider this letter to
be an inspection report. The Williamses neither retained Knight Engineering nor
authorized them to do an inspection of the property. Before the sale to the
Dardennes, the Williamses had discussions with their former real estate agent,
John Sellner, about whether to fix various items in the home, including the
tilt in the home’s floors. The Williamses ultimately told Sellner that they
would sell the house in its current condition rather than incur the cost of
fixing the floors. After their contract with Sellner expired, Sellner obtained
the 2006 letter from Knight Engineering. The Williamses reiterated to Sellner,
who was no longer their agent, that they were not interested in bids on fixing
the floor, but Sellner left the letter on their back doorstep, along with a
bill for the inspection. The Williamses returned the letter and the bill to
Sellner’s office and refused to pay it. But the Williamses read the letter
before they returned it. 

The letter is signed by Tony
Knight, who was not a licensed engineer, but also bears the stamp and signature
of registered engineer Dennis Spencer. It states that the home’s foundation
“exceeds our company criteria for a normal slope (1-inch in 15-feet)” and had
slopes “as steep as 1-inch in about 3-feet.” It further states that the home’s
overall differential is approximately 5 ¾ inches and “[f]rom my experience most
homeowners call for assistance with foundation problems when the home is
between about 2 ½-inches to 3 ½-inches in total differential and slopes exceed
1-inch in 15-feet.” The letter states that “interior and exterior distress
confirms that differential movements have occurred,” and lists the following specific
signs of distress: brick cracks and brick repairs, sheetrock cracks and
wrinkled corner joints. It concludes that the foundation is experiencing “excessive
differential movements,” based on the pattern of sloping and distress, and
recommends that the Williamses consider repairs shown on the plates and an “under
slab plumbing leak test.” Knight Engineering had drawn up two proposed
contracts to perform foundation repairs to the home, using two alternative
methods, but these contracts were not sent to the Williamses.

          Before
the closing, the Dardennes had the property inspected by their independently
selected inspector, Linda McCracken of Inspections Unlimited, who is not a
licensed engineer. Before the inspection, Marilyn Dardenne conveyed to
McCracken what was said about the home’s foundation in the 2005 Gray report. McCracken’s
report indicated that she inspected the home’s foundation but, unlike the Sherlock
report, she did not check the box indicating that the foundation was not
functioning or needed repairs. The McCracken report stated that the “foundation
of the home was considered to be adequately performing the function for which
[sic] intended.” It stated that “[n]o major sheetrock cracking was observed”
and that there were “no visible signs of racking or twisting in the visible
roof framing and the fascia corners were tight.” The report also noted that
previous foundation repairs had been performed and advised the Dardennes that
“the variation of the moisture content of the foundation soil is probably the
most significant factor contributing to continuing foundation movement,”
recommending a lawn maintenance program to minimize foundation problems in the
future. 

The Dardennes admit that the
Williamses did not interfere with McCracken’s inspection of the house. Marilyn
Dardenne admitted that she and her husband were aware that the house exhibited
signs of prior foundation movement when they bought the house and that the
Williamses did not represent to them that there was no damage due to foundation
movement. She also admitted that the Williamses did not represent to them that
the foundation would not continue to move after they purchased the home or that
the foundation’s movement would not cause damage to the home in the future. She
further acknowledged her understanding that, upon purchasing the home, she
accepted the risk of further foundation movement and damage to the home.

After McCracken’s inspection, the
Williamses and Dardennes amended the sale contract, extending the option period
and amending the “Acceptance of Property Condition” provision to require the
following additional repairs and treatments before closing: “A/C coil and drain
pan replacement. Rotted wood repair per inspection report. Vent will be
provided for water heater. Termite treatment will be done.” They did not
require any foundation repairs. 

The Dardennes executed a Buyer’s Walk-Through
and Acceptance Form before the closing, indicating that they had walked through
and reviewed the property. This document contains one handwritten note: “Repair
oven handle.” It also confirms that the Dardennes had an independent inspection
performed and reviewed that inspection report.

          Approximately six to seven months after
they purchased the property, “things really began to change in the house.”
Large cracks appeared in the walls, the Dardennes were unable to close doors,
and the floor moved. The Dardennes hired Knight Engineering to inspect their
foundation, at which point they discovered the existence of the 2006 Knight
Engineering letter. The Dardennes then sued the Williamses, alleging violations
of the Texas Deceptive Trade Practice Act (the “DTPA”), fraud and negligent
misrepresentation based on the Williamses’ failure to disclose the Knight
Engineering letter. 

The jury found in favor of the Dardennes
on their DTPA, fraud and negligent misrepresentation claims. The Williamses
moved for judgment notwithstanding the verdict, arguing that the Dardennes’
recovery was barred by an “as is” clause in the sale contract in combination
with the Dardennes’ pre-purchase inspection of the home. The trial court denied
the motion and entered judgment on the verdict, awarding the Dardennes $30,000
in actual damages, plus pre- and post-judgment interest, and $70,000 in
reasonable and necessary attorney’s fees. 

Standard of Review

In their first issue on appeal, the Williamses assert that
the trial court erred in failing to grant their motion for judgment
notwithstanding the verdict because the Dardennes’ pre-purchase inspection of
the property and the “as is” clause in the parties’ contract negate the elements
of causation and reliance necessary to the Dardennes’ causes of action. 

We review the grant or denial of a motion for judgment
notwithstanding the verdict under a legal-sufficiency standard, crediting
evidence favoring the jury verdict if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not. Tanner v. Nationwide
Mut. Fire Ins. Co., 289 S.W.3d 828, 830 (Tex. 2009) (citing City of
Keller v. Wilson, 168
S.W.3d 802, 823 (Tex. 2005)); Whitney Nat’l Bank v. Baker, 122 S.W.3d 204, 207 (Tex. App.—Houston
[1st Dist.] 2003, no pet.). The Williamses were entitled to judgment
notwithstanding the verdict if the record shows: (1) a complete lack of
evidence of a vital fact; (2) the trial court is barred by the rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is not more than a scintilla; or
(4) the evidence establishes conclusively the opposite of a vital fact. City
of Keller, 168 S.W.3d at
810, 823; Requena v. Otis Elevator Co., 305 S.W.3d 156, 162 (Tex. App.—Houston
[1st Dist.] 2009, no pet.).

Judgment Notwithstanding the Verdict

The Williams contend that the “Acceptance
of Property Condition” provision in the TREC contract used by the parties constitutes
an “as is” clause. That provision states that the Dardennes accepted the
property “in its present condition” subject to certain negotiated repairs and
treatments to be performed by the Williamses, none of which relate to the
home’s foundation. Numerous courts have agreed with the Williamses. See Boehl v. Boley, No. 07–09–0269–CV, 2011 WL 238348, at *2 (Tex.
App.—Amarillo Jan. 26, 2011, pet. filed) (per curiam) (mem. op.) (“[A] TREC
contract using the language ‘in its current condition’ has been construed to be
an ‘as is’ agreement.”); Ritchey v. Pinnell, 324 S.W.3d 815, 817 (Tex.
App.—Texarkana 2010, no pet.) (construing same language in standard real estate
contract); Sims v. Century 21 Capital Team, Inc., No. 03–05–00461–CV, 2006 WL 2589358, at *2 (Tex. App.—Austin
Sept. 7, 2006, no pet.) (mem. op.) (construing identical clause in TREC form
contract); Larsen v. Carlene Langford
& Assocs., Inc., 41 S.W.3d 245, 251 (Tex. App.—Waco 2001, pet. denied)
(interpreting same language in TREC earnest money contract). We need not
determine whether we agree with this interpretation because the Dardennes do
not contend otherwise; they make a different argument for why an “as is” provision
does not bar their claims. Therefore, we will treat the clause as the
equivalent of an “as is” clause.

A buyer who purchases property “as is” chooses “to rely
entirely upon his own determination” of the property’s value and condition
without any assurances from the seller. Prudential Ins. Co. of Am. v.
Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995); see also Tex. Bus. & Com. Code Ann. § 2.316(c)(1) (West 2009) (“as
is” agreement excludes implied warranties). Thus, the buyer assumes the
responsibility of assessing the property’s value and condition as well as the
resulting risk that the property is worth less than the price paid. Prudential, 896 S.W.2d at 161. This evaluation
on the part of the buyer constitutes a new and independent basis for the
purchase, one that disavows any reliance on representations made by the seller.
Id.; see Mid
Continent Aircraft Corp. v. Curry Cnty. Spraying Serv. Inc., 572 S.W.2d 308, 313 (Tex. 1978) (in
“as is” contract, buyer “has taken the entire risk as to the quality of the
[property] and the resulting loss.”). Thus, a valid “as is” clause negates the
elements of causation and reliance for DTPA, fraud, or negligence claims relating
to the value or condition of the property. Prudential, 896 S.W.2d at 161;
Welwood v. Cypress Creek Estates, Inc., 205 S.W.3d 722, 726 (Tex. App.—Dallas
2006, no pet.) (“In general, a valid ‘as is’ agreement negates the element of
causation necessary to recover on claims regarding the physical condition of
the property.”); Larsen, 41 S.W.3d at 253 (holding that “as is” clause
in earnest money contract conclusively negated causation and reliance elements
of plaintiff’s fraud, negligence and DTPA claims); Boehl, 2011 WL 238348,
at *2 (affirming summary judgment on ground that “as is” clause in TREC
residential resale contract negated causation as to buyer’s DTPA, fraud and
negligence claims).

The Dardennes argue that the “as is” provision of the sale
contract is not enforceable because it was procured by fraudulent inducement. An
“as is” clause that is induced by specific misrepresentations about the
condition of property will not shield the seller from liability. Prudential, 896 S.W.2d at 161, 162 (“A seller
cannot have it both ways: he cannot assure the buyer of the condition of a
thing to obtain the buyer’s agreement to purchase ‘as is,’ and then disavow the
assurance which procured the ‘as is’ agreement.”); see also Pairett v. Gutierrez,
969 S.W.2d 512, 517 (Tex. App.—Austin 1998, pet. denied) (reversing summary
judgment on basis of “as is” clause when there was evidence that seller knew of
home’s foundation problems but affirmatively represented to buyer that they
were not aware of any foundation problems).[2]


 “Fraudulent
inducement . . . is a particular species of fraud that arises only in the
context of a contract and requires the existence of a contract as part of its
proof. That is, with a fraudulent inducement claim, the elements of fraud must
be established as they relate to an agreement between the parties.” Haase v. Glazner, 62 S.W.3d 795, 798–99
(Tex. 2001). The
elements of fraud are that a material representation was made, the
representation was false, the speaker knew the statement was false when made,
the statement was made to induce reliance, it did induce reliance, the reliance
was justifiable, and the relying party suffered injury as a result. See Grant Thornton LLP v. Prospect High
Income Fund, 314 S.W.3d 913, 923
(Tex. 2010); Aquaplex, Inc. v. Rancho La
Valencia, Inc., 297 S.W.3d 768, 774 (Tex. 2009). 

The Dardennes assert that the Williamses fraudulently
concealed the foundation’s condition by failing to disclose the Knight
Engineering letter.[3] The
jury found in favor of the Dardennes on their fraudulent inducement claim, and
the Williamses have not raised any challenge to the jury’s findings except to
argue that lack of causation and reliance are established as a matter of law.
Therefore, we will assume that the Williamses’ failure to disclose the Knight
Engineering letter was fraudulent—i.e., material to the transaction, known to
be false or misleading, and intended to induce reliance by the Dardennes—and
will affirm the judgment if there is legally sufficient evidence that this
nondisclosure was the cause of the Dardennes’ agreement to purchase the
property “in its present condition.” See Prudential, 896 S.W.2d at 162 (stating
that “as is” clause is not effective to negate causation when agreement was
induced by “fraudulent representation or concealment of information by the
seller”).

Under certain circumstances, a buyer’s independent
inspection of the property may conclusively defeat two elements of a fraud claim:
causation and reliance. Although the courts of appeals have articulated
different tests for when a buyer’s independent inspection will defeat causation
and reliance as a matter of law,[4]
the courts have consistently applied these tests such that a buyer’s
independent inspection precludes a showing of causation and reliance if it
reveals to the buyer the same information that the seller allegedly failed to
disclose. See Lesieur v. Fryar, 325 S.W.3d 242, 246 (Tex. App.—San Antonio
2010, pet. filed) (holding that causation and reliance were conclusively
defeated when buyer’s independently obtained inspection report contained same
information about foundation issues as report that sellers failed to disclose);
Ritchey, 324 S.W.3d at 819 (holding fraud claim was not precluded by
buyer’s independent inspection of house because it did not reveal defects at
issue); Bernstein v. Thomas,
298 S.W.3d 817, 822–23 (Tex. App.—Dallas 2009, no pet.) (affirming judgment in
favor of buyer based on seller’s failure to disclose report recommending
foundation repair when both buyer and seller were aware of floor slope but only
seller was aware foundation repair was needed); Lim v. Lomeli, No. 04–06–00389–CV, 2007 WL 2428078, at *4 (Tex.
App.—San Antonio Aug. 29, 2007, no pet.) (mem. op.) (holding that buyers could
not prove reliance on their real estate agent’s alleged misrepresentations and
nondisclosures regarding water damage to house when agent and buyer had same
information available to them: visible damage and information disclosed in
buyer’s inspection report); Bartlett v. Schmidt, 33 S.W.3d 35, 41 (Tex.
App.—Corpus Christi 2000, pet. denied) (reversing judgment awarded against
seller on basis of restrictions on property when seller represented that there
were no restrictions on property but buyer subsequently obtained title report
from which seller concluded that there were no restrictions despite presence of
information in title report sufficient to disclose restrictions); Dubow v.
Dragon, 746 S.W.2d 857, 860
(Tex. App.—Dallas 1988, no writ) (affirming summary judgment in favor of seller
when buyer obtained independent inspection of foundation and estimates for
foundation repair before purchasing house and negotiated modification of
contract in light of same).[5]
This is consistent with the principle that a party who has actual knowledge of
specific facts cannot have relied on a misrepresentation of the same facts. See Camden
Mach. & Tool, Inc. v. Cascade Co., 870 S.W.2d 304, 311 (Tex.
App.—Fort Worth 1993, no writ) (stating, in case where seller failed to
disclose prior foundation repair but buyer discovered foundation settling in
independent investigation, “When a person makes his own investigation of the facts,
and knows the representations are false, he cannot, as a matter of law, be said
to have relied upon the misrepresentations of another.”).

The issue, then, is whether the Dardennes presented any
evidence of reliance to support their claim for fraudulent inducement. See Grant Thornton, 314 S.W.3d at 923 (reliance is necessary element of fraud claims); Aquaplex, 297 S.W.3d at 774 (same). In
the context of fraudulent inducement, this requires evidence that the claimant
would not have entered into the contract but for the alleged misrepresentation
or fraudulent nondisclosure. See ISG State Operations, Inc. v. Nat’l
Heritage Ins. Co.,
234 S.W.3d 711, 716 (Tex. App.—Eastland 2007, pet. denied) (stating that
ordinary detrimental reliance is not sufficient to support fraudulent
inducement claim; claimant must show that it was induced into executing contract)
(citing Haase, 62 S.W.3d at 798); Procter
v. RMC Capital Corp., 47 S.W.3d 828, 834 (Tex. App.—Beaumont 2001,
no pet.) (holding that home buyer seeking to avoid effect of “as is” clause on
basis of fraudulent inducement must put forth some evidence that he would not
have assented to “as is” clause in contract but for seller’s misrepresentations
about property condition at issue); see
also Dallas Farm Mach. Co. v. Reaves,
158 Tex. 1, 12–13, 307 S.W.2d 233, 240 (1957) (adopting the rule: “If one is
induced to go through the form of making a contract because of some fraud or
misrepresentation made by the other party or his agent, relative to a material
element of the agreement, such that if he
had known the truth he would not have given his assent, the contract may be
avoided by him.”) (quoting 1 Elliot on
Contracts § 70 (1913), emphasis added). Here, the only evidence in the record relating to this issue is
the following testimony:

[Counsel]:              Knowing now what you know about
the performance of the slab, the condition, the foundation at the time you
bought it, would you have still bought the home?

 

[Ms. Dardenne]:    We would only have bought the home if we
knew the foundation could be repaired or if the price would be reduced enough
that we could have a credit to pay for it to be repaired.

 

We wouldn’t have bought it knowing it was like this.

 

This testimony is no evidence that the Dardennes would not
have purchased the property if the Knight Engineering letter had been listed in
the seller’s disclosure. What the Dardennes knew at the time of trial included
a great deal more than what was contained in the Knight Engineering letter.
There was extensive evidence that the home suffered significant
foundation-related damage after the Dardennes purchased it. Thus, the fact the
Dardennes would not have entered the agreement knowing the full extent of the
future foundation damage in the years that followed is no evidence that the
Dardennes would not have entered the sale agreement in 2006 if the Knight
Engineering letter had been listed in the Williamses’ seller’s disclosure. See ISG State Operations, 234 S.W.3d at
718 (“The absence of any testimony that the Subcontract would not have been
executed but for NHIC’s misrepresentation is fatal to ISG’s fraudulent
inducement cause of action.”). There is also no evidence in the record that the
Dardennes would have read the Knight Engineering letter if it had been listed
in the seller’s disclosure. The Dardennes did not review the Sherlock report,
which was listed in the disclosure. The Dardennes testified that they reviewed
the Gray report, not the Sherlock report. The Williamses were not obligated to
provide a copy of the reports listed in the seller’s disclosure and could not
have provided a copy of the Knight Engineering report because they had not kept
it. 

          The absence of reliance evidence is
particularly troublesome in this case, because the information contained in the
undisclosed report was duplicative of the information contained in the reports
that were disclosed. The chart below compares the information in the Knight
Engineering letter to the information in the other, disclosed reports:


 
 
 Knight Eng’ring Letter
 
 
 Gray Report
 
 
 Sherlock Report
 
 
 
 
 regarding
 slope:
 
 
 
 
 “exceeds our
 company criteria for a normal slope”
 “as steep as
 1-inch in about 3-feet” overall differential of approximately 5 ¾-inches.
 
 
 “much less
 level than what we normally find”; charts show elevations of the floor from
 side to side and from front to rear on both sides of the house, with overall
 differential up to approx. 6 inches
 
 
  
 
 
 
 
 
 regarding damage:
 
 
 
 
 “interior
 and exterior distress” show “differential movements have occurred”
 lists signs
 of distress: brick cracks and brick repairs, sheetrock cracks and wrinkled
 corner joints
 
 
 “exhibit[s]
 damage due to foundation movement”
 lists signs
 of distress: visible fractures in the foundation surface, “stair-step” cracks
 in the brick veneer, diagonal cracks in the stucco, and “separations between
 materials”
 
 
 “structural
 movement of the building has occurred”
 rate of
 movement could not be predicted in one-time inspection, but it should be
 monitored in the future
 “slab has
 experienced signs of settlement”
 identifies
 signs of distress: cracking in the foundation, cracks in the grade beam,
 brick veneer, garage floor and sheetrock
 
 
 
 
 regarding
 repair:
 
 
 
 
 recommends
 foundation repairs
 
 
 indicates repairs not currently needed
 
 
 recommends foundation repairs
 
 


 

In sum, the reports disclosed to
the Dardennes by the Williamses contain the same information as the Knight
Engineering letter. See Lesieur, 325 S.W.3d at 247 (holding that, when
seller failed to disclose inspection report to home buyer, issue was whether
undisclosed report contained any information not available to buyer in buyer’s
independently obtained inspection report);[6]
Lomeli, 2007 WL 2428078,
at *4 (holding that buyers could not prevail against seller for nondisclosure of
water damage problems in home when information available to sellers was
available to buyers); Cole v. Johnson, 157 S.W.3d 856, 860–61 (Tex. App.—Fort Worth 2005, no pet.)
(holding that buyer could not prevail on suit against seller for nondisclosure
of refund on certain foundation repairs and cancelation of related warranty
because signs of foundation issues and history of foundation repair was
otherwise disclosed to buyer); Camden Mach. & Tool, 870 S.W.2d at 312–13
(holding that seller’s failure to disclose prior foundation repair could not
support recovery when buyer was aware, before sale, that foundation had
suffered major settling). Thus, the Dardennes needed to prove that, if the
Williamses had disclosed the Knight Engineering letter, they (1) would have
requested a copy and read it and (2) would not have agreed to purchase the
property under the existing sale contract as a result. Marilyn Dardennes’s
testimony regarding what they would have done in light of their current
knowledge does not satisfy this burden.

Because there is no evidence that the Dardennes would not
have entered into the contract to purchase the property if the Williamses had
listed the Knight Engineering letter in their disclosure, the trial court erred
in failing to grant the Williamses’ motion for judgment notwithstanding the
verdict on the Dardennes’ fraudulent inducement claim. See City of Keller, 168 S.W.3d at 810, 823 (standard
for granting judgment notwithstanding the verdict); Requena, 305 S.W.3d at
162 (same). Because the “as is” clause in the parties’ contract was not
fraudulently induced and the Dardennes raise no other challenge to its
enforceability, the clause precludes the Dardennes from establishing the
elements of causation and reliance with respect to their fraud, DTPA, and negligent misrepresentation
claims against the Williamses. See Prudential, 896 S.W.2d at 161–62;
Welwood, 205 S.W.3d at 726–27; Larsen, 41 S.W.3d at 253. The
trial court thus erred in failing to grant the Williamses’ motion for judgment
notwithstanding the verdict on all claims asserted by the Dardennes in this
action. 

Conclusion

          We reverse the trial court’s judgment
and render judgment that appellees Richard and Marilyn Dardenne take nothing on
their claims against appellants Roger and Michelle Williams. Because of our
disposition, we need not reach the Williamses’ second issue on appeal.

          

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Brown.











[1]           Section
5.008 requires that the seller’s disclosure contain certain information, but
this information regarding prior inspection reports is not mandated by the
statute. See Tex. Prop. Code Ann. § 5.008(b).





[2]           The
Dardennes do not rely on two other grounds for challenging the effectiveness of
the “as is” clause: they do not claim the Williamses interfered with their
inspection or actively concealed the foundation’s condition. In such
circumstances, an “as is” is not effective to bar liability. Prudential,
896 S.W.2d at 162; see Smith v. Levine,
911 S.W.2d 427, 433 (Tex. App.—San Antonio 1995, writ denied) (holding that “as
is” clause did not negate causation on DTPA claims when seller knowingly concealed
foundation damage before inspection). Nor do they claim the clause is unenforceable
because it was not freely negotiated, such as when a boiler-plate “as is” provision
is forced upon a buyer of unequal bargaining power, or that it does not meet
the standards set forth in Forest Oil Corp.
v. McAllen. 268 S.W.3d 51, 60 (Tex. 2008); see also Kane v. Nxcess Motorcars, Inc., No. 01–04–00547–CV, 2005
WL 497484, at *6 (Tex. App.—Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem.
op.) (stating that validity of an “as is” agreement turns in part on relative
sophistication of parties and whether agreement was freely negotiated) (citing Bynum
v. Prudential Residential Servs. Ltd. P’ship, 129 S.W.3d 781, 788–89 (Tex. App.—Houston [1st Dist.] 2004,
pet. denied); McDougal v. Stevens,
No. 04–07–00814–CV, 2009 WL 1664600, at *3 (Tex. App.—San Antonio Jan. 30, 2009,
pet. denied) (mem. op.) (evaluating whether an “as is” agreement satisfied
factors set forth in Forest Oil).





[3]           On appeal, the Dardennes also assert
that the Williamses fraudulently misrepresented the foundation to be in a
“repaired” condition based on the “repaired” note in the seller’s disclosure. However,
that note is fully explained in the disclosure, which states, “Foundation has
been repaired prior to our ownership”
and marks the “Previous Foundation Repairs” box with a note indicating that the
repairs were performed by the previous owners in 1990. At trial, it was
undisputed that the foundation had been repaired in 1990, before the
Williamses’ ownership of the property, and that the Williamses disclosed these
prior repairs to the Dardennes. The expert reports obtained by both the
Williamses and the Dardennes noted these prior repairs; the Williamses’
seller’s disclosure noted these repairs; and Marilyn Dardenne testified that there
was no dispute that the repairs had been performed.





[4]           See Ritchey, 324 S.W.3d at 819 (discussing
differences between standards adopted by Dallas and San Antonio Courts of
Appeals) (citing Bernstein v. Thomas, 298 S.W.3d 817, 822–23 (Tex. App.—Dallas 2009, no pet.); Kupchynsky
v. Nardiello, 230 S.W.3d
685, 688–89 (Tex. App.—Dallas 2007, pet. denied); Fernandez v. Schultz, 15 S.W.3d 648, 652 (Tex.
App.—Dallas 2000, no pet.); Lesieur v. Fryar, 325 S.W.3d 242, 244 (Tex.
App.—San Antonio 2010, pet. filed); Dubow v. Dragon, 746 S.W.2d 857, 860 (Tex.
App.—Dallas 1988, no writ)). 





[5]           Additionally,
an independent inspection will not preclude causation and reliance when the
seller interferes with the buyer’s ability to fully discover the defect upon
inspection, such as by covering up evidence of the defect or, if the inspection
reveals evidence of the defect but the seller misleads the buyer about the
nature or cause of such evidence. See Kupchynsky, 230 S.W.3d at 688–89 (affirming judgment against home builder
when buyer’s inspection revealed recurring water on the balcony, in response to
which builder falsely represented that house was “built that way” and that he
had performed drainage “per the blue prints”); Fernandez, 15 S.W.3d at 652 (affirming
judgment against seller when seller made cosmetic repairs to conceal termite
damage inside house and expressly misrepresented in disclosure that he had no
knowledge of any termite problems, though buyer’s inspection uncovered termites
in exterior of house but not interior of house). The Daredennes, however, do
not make such a claim here. 





[6]           We
note that factually, this case is very similar to Lesieur, 325 S.W.3d at 244. However, because
there is no evidence of reliance in this record, we need not rely on the
information otherwise disclosed to the Dardennes to reach our holding.