**Harry DUBOW, and Wife, Susan Dubow, Appellants,**

v.

**Leon DRAGON, and Wife, Carol Dragon, Appellees.**

**No. 05–87–00329–CV.**

Court of Appeals of Texas, Dallas.

Feb. 4, 1988.

James P. Finstrom, Dallas, for appellants.

Cynthia Hollingsworth, Gardere & Wynne, Dallas, for appellees.

Before ENOCH, C.J., and WHITHAM and McCLUNG, JJ.

WHITHAM, Justice.

In this action for violations of the Texas Deceptive Trade Practices–Consumer Protection Act, brought by the purchasers of a home against the sellers, the appellant-purchasers, Harry Dubow, and wife, Susan Dubow, appeal from a summary judgment in favor of the appellee-sellers, Leon Dragon, and wife, Carol Dragon. We find no merit in either of the Dubows' two points of error. Accordingly, we affirm.

The underlying dispute arose out of the sale of a home. The question presented to this court is whether consumers, who discover problems in a house which they wish to purchase, who then have their own experts confirm and describe these problems to them, who modify their contract and renegotiate the purchase price based on known and anticipated problems, who then agree to purchase a house "as is, WITH ALL CONTINGENCIES REMOVED", and who later decide they have made a bad deal, can successfully sue the sellers for alleged defects in the house.

The Dubows limit their appeal to purported questions of fact regarding alleged misrepresentations and an alleged failure to disclose information regarding the foundation of the family room and water leaks in the roof. This summary will, therefore, focus on facts relative to those areas, limited to the record brought forward on appeal. Consider then the undisputed facts found in the depositions of the Dubows and the deposition of one of their inspectors and the reports of their inspectors.

In October, 1984, on two occasions the Dubows visited the Dragons' house which was listed for sale because the Dragons were moving to Chicago. The interior appeared shabby to the Dubows in several regards, and the Dubows were not satisfied with the house itself, but they very much liked the lot on which the house is located. Subsequently, the Dubows agreed to purchase the house for $445,000.00. This was $50,000.00 less than the asking price. From the outset, the Dubows anticipated spending at least $40,000.00 to $50,000.00 to make changes to the home.

The Dubows were given the right to inspect the house under the contract, and the inspection was a condition precedent to closing. The Dubows hired Cooper Brothers, Inc., to perform the inspection. Mike Cooper thoroughly inspected the house and prepared a written report for the Dubows. Cooper inspected the plumbing, electrical system, roof, foundation, sprinkler system, heating and air conditioning, the cellar and all other visible areas. The report identified several existing problems and potential problems. The report reflects differential movement in the concrete slab which affected the entire house, including stress cracks in the interior walls, sticky doors and sloping floors.

Upon receipt of Cooper's report, the Dubows were concerned and initially planned to terminate the contract. The Dubows decided to explore the situation further, however, and hired a foundation specialist. ECI Services, Inc., inspected the house and provided a written report to the Dubows. Nick Manesh of ECI Services, Inc., reported that he had inspected the 30–year-old house with regard to structural distress relative to differential foundation movement. He noted additional problems attributable to differential foundation movement including "cracks in brick mortar and perimeter beam, separation of brick veneer from door and window frames, floors not level, door frames not plumb, sheet rock cracks, etc." The overall magnitude of the differential displacement was noted, as

well as the fact that it was greater in certain parts of the house than others. In addition to receiving reports from their inspector who examined the entire house and from their foundation experts, the Dubows also had an architect and contractor look at certain aspects of the house prior to closing.

After receiving the reports on the condition of the house, the Dubows received estimates for repairs for existing problems in the house totalling about $4,000.00. Because there were foundation and other problems, they were "concerned that there were going to be other basic deficiencies and problems in the house" such as "plumbing, electricity, foundation, etc.". Because they worried about potential, unknown problems, the Dubows refused to purchase the house at the agreed-to price and demanded, instead, that the sale price be further reduced—not by $4,000.00 but by $17,500.00. The parties modified the contract, and the Dubows agreed as follows:

> After careful inspection of the house, and with professional opinions, [w]e feel that the house will need extensive on-going maintenance because of the site positioning, foundation and drainage. See attached inspection report. We will take the home as is, WITH ALL CONTINGENCIES REMOVED. (emphasis original).

After closing and taking possession of the house, the Dubows allegedly encountered problems as they feared and brought suit against the Dragons.

In their first point of error, the Dubows contend that the trial court erred in granting summary judgment based on the contract modification because a fact issue exists as to whether the Dragons induced the Dubows to make the original agreement by misrepresentation. In their second and remaining point of error, the Dubows contend that the trial court erred in granting summary judgment based on the "as is" modification because such contract was obtained in violation of section 17.46 of the

Deceptive Trade Practices–Consumer Protection Act. TEX.BUS. & COM.CODE ANN. § 17.46 (Vernon 1987). The Dubows combine these points for argument and we will treat disposition of the two points together. We note that the summary judgment is attacked only on those two specific grounds, and the trial court did not specify the basis of its judgment. Because there is no general point complaining of the summary judgment, if there is another possible ground on which the judgment could have been entered, the judgment must be affirmed. *See Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970). The Dragons contend that the Dubows' own testimony, the testimony of Mike Cooper, and the reports of Cooper & ECI entitle them to judgment as a matter of law.

With regard to the alleged withheld information or misinformation regarding the family room foundation and roof leaks, Dr. Dubow testified and it is undisputed that the Dragons never specifically discussed these areas. After the Dubows hired inspectors, Cooper reported leaks in the roof around a vent stack, storm collars that were not pulled down over roof jacks, a cracked sun screen at den skylites, and potential water penetration at the garage. Cooper also reported differential foundation movement which had caused cracks, sticky doors and sloping floors. Cooper further reported that the slab could experience *3 to 5 inches* of differential movement. The report of the foundation specialists (ECI) also addressed the problems attributable to differential foundation movement: cracks in brick mortar and perimeter beam, separation of brick veneer from door and window frames, floors not level, door frames not plumb, sheet rock cracks, etc.

The Dubows argue in their brief that they confronted the Dragons with certain problems, that they were assured that this was a good house with no problems and that, therefore, a fact question is presented. Under Section 17.46(b) of the Act, "producing cause" and not "reliance" is the

ultimate standard. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985); *see* § 17.50(a). The operative words for our purposes are "producing cause." *Weitzel*, 691 S.W.2d at 600. Thus, section 17.50(a) provides that a consumer may maintain an action, among other things, when there is proof of a deceptive act or practice under section 17.46(b) which is a producing cause of the consumer's actual damages. *Weitzel*, 691 S.W.2d at 600.

▮ Therefore, we reach the question of whether in this summary judgment case, the Dragons have established as a matter of law that no deceptive act or practice on their part was a producing cause of the Dubows' actual damages. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970) (emphasis omitted). Therefore, a defendant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of plaintiff's cause of action does not exist. *Price v. Hurt*, 711 S.W.2d 84, 86 (Tex.App.—Dallas 1986, no writ). We focus then on the "producing cause" element of the Dubows' cause of action. Producing cause means an efficient, exciting or contributing cause. *Texas Indemnity Insurance Co. v. Staggs*, 134 Tex. 818, 134 S.W.2d 1026, 1028 (Com. App.1940). Producing cause is sometimes referred to as factual causation. *Riojas v. Lone Star Gas Co.*, 637 S.W.2d 956, 959 (Tex.App.—Fort Worth 1982, writ ref'd n.r. e.). Producing cause lacks the element of "foreseeability" embraced by the standard of proximate causation. *Riojas*, 637 S.W. 2d at 959.

▮ Our producing cause inquiry thus poses the question of whether the Dragons'

statements about the house to the Dubows was an efficient, existing or contributing cause of the Dubows' actual damages or whether the Dubows' actions in relying on their own inspection of the house's condition, constituted a new and independent basis for the purchase which intervened and superseded the Dragons' alleged wrongful act and itself became the sole and efficient cause of the Dubows' actual damages. We conclude that, as a matter of law, the Dubows' "careful" inspection of the house's condition constituted a new and independent basis for the purchase which intervened and superseded the Dragons' alleged wrongful act. We reach this conclusion by reading the first two sentences of the above-quoted portion of the contract modification which we here repeat:

> After careful inspection of the house, and with professional opinions, [w]e feel that the house will need extensive on-going maintenance because of the site positioning, foundation and drainage. See attached inspection report. We will take the home as is, WITH ALL CONTINGENCIES REMOVED. (emphasis original).

We reason that the "careful inspection of the house" and the "professional opinions" obtained by the Dubows were the sole efficient cause of the Dubows' actual damages.

In light of the above, we conclude that any alleged statements or failures to disclose on the part of the Dragons were not a producing cause of any damage to the Dubows. Therefore, we conclude further that the Dubows have no cause of action under the Act as a matter of law. We reach these conclusions because, based on the undisputed facts, it is obvious that the Dubows did not rely on any alleged misrepresentations or failures to disclose since the Dubows hired experts of their own to inspect the house, and they relied on these experts in negotiating and obtaining a contract modification affording them a reduced purchase price. Hence, we conclude that the Dragons established as a matter of law that at least one element of the Du-

bows' cause of action: to wit, producing cause, does not exist. Therefore, we conclude that the Dragons were entitled to summary judgment. We overrule the Dubows' first point of error. In light of the above, we conclude further that even if the "as is" modification was obtained in violation of section 17.46 of the Act, the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one other of the essential elements of the Dubows' cause of action—producing cause. Thus, we conclude that the trial court did not err in rendering summary judgment in favor of the Dragons. We overrule the Dubows' second point of error.

Affirmed.