J.A. "Pepe" FERNANDEZ, Appellant,

v.

Gavin R. SCHULTZ and Cynthia Schultz, Appellees.

No. 05–99–00506–CV.

Court of Appeals of Texas, Dallas.

April 13, 2000.

R. Scott Steinbach, The Steinbach Law Firm, Dallas, for Appellant.

Paul R. Leake, Boyd & Leake, Mesquite, for Appellees.

Before Justices LAGARDE, MORRIS, and O'NEILL.

**OPINION**

JOSEPH B. MORRIS, Justice.

In this case arising out of the sale of a private home, we address the issue of whether a thorough inspection by the buyers will always relieve the seller of liability for alleged misrepresentations about the home's condition. J.A. "Pepe" Fernandez contends there is no evidence to support the trial court's finding that he knowingly misrepresented the condition of the home he sold to Gavin and Cynthia Schultz. In the alternative, Fernandez contends the Schultzes' reliance on a professional inspection report after his alleged misrepresentations was a new and independent basis for the purchase, which intervened and superseded any misrepresentations he may have made. Fernandez also argues that the Schultzes failed to mitigate their losses and, therefore, the trial court's award of damages was excessive. We conclude there is some evidence that Fernandez knowingly misrepresented the condition of the house. We also conclude that an independent inspection does not always supersede a seller's misrepresentations as a producing cause of damages to the buyer. Rather, as here, the seller's misrepresentations may be one of several producing causes of the damages suffered. Finally, we conclude the trial court did not err in making its award of damages. We affirm the trial court's judgment in favor of the Schultzes.

I.

Pepe Fernandez is a real estate agent who buys and resells houses for a profit. In April 1995, he became interested in purchasing a house being offered for sale by the U.S. Department of Housing and Urban Development. Fernandez personally inspected the house and decided to make an offer to purchase it. His initial offer was rejected by HUD in favor of another offer but was placed as a back-up in the event the contract for sale with the winning bidder did not close.

The winning bidder hired a licensed inspector to examine the house. The inspector found evidence of active termites inside the home, including noticeable holes in the bathroom ceiling and active termites in the baseboards. The winning bidder terminated the contract, and HUD then asked Fernandez if he was still interested in purchasing the property. Fernandez personally examined the house again and purchased it on September 1, 1995. Fernandez stated he was familiar with the signs of termite infestation and denied seeing any evidence of termites in the house before he bought it.

Shortly after purchasing the property, Fernandez hired several contractors to make repairs and improvements. Fernandez intended to place the house back on the market for sale once the repairs were completed. One of the contractors Fernandez hired was Tony Nova. Nova testified he had done remodeling work for Fernandez in the past on a number of different houses. For the house involved here, Nova was hired to perform general repair work including repainting the interior and exterior walls.

During the course of making repairs, Nova noticed evidence of active termites. According to Nova, he informed Fernandez about the termites, and Fernandez told him to continue his work making cosmetic repairs. Nova further testified he had covered over termite damage in other homes for Fernandez. Nova went ahead with the repairs, including replacing destroyed sheetrock, and purchasing paint for the house on October 10 and October 15, 1995.

Gavin Schultz testified he and his wife were looking at houses for sale in the summer and early fall of 1995. They became aware of the house being sold by Fernandez through their real estate agent. Schultz stated he toured the house with his agent and, at that time, it had been newly painted and carpeted. Schultz made an offer to purchase the house and, following a series of negotiations, signed an earnest money contract on October 31, 1995.

On the same day he entered into the earnest money contract, Schultz received a "Seller's Disclosure of Property Condition" form signed by Fernandez. The form was dated October 29, 1995. Fernandez indicated on the form that he had no knowledge of any active termites, termite damage, or previous termite treatment. The Schultzes hired an inspector to examine the house, and an inspection was performed on November 21. This inspection uncovered active termites on the house's exterior, as well as evidence of previous termite treatment along the front porch. Fernandez paid to have a "spot" treatment done for the termites on the exterior. The sale of the house to the Schultzes closed on December 1, 1995.

The following spring, the Schultzes discovered a swarm of termites inside their home. They telephoned Fernandez who referred them to the pest control company that performed the spot treatment before closing. The company returned to the home in June 1996 and performed another spot treatment. This appeared to resolve the problem until the spring of 1997 when termites again swarmed inside the house. This time the Schultzes paid for a full treatment by a different pest control company. The Schultzes also hired a general contractor to examine the house and estimate the cost of repairing the damage caused by the termites.

The Schultzes filed suit against Fernandez alleging he covered up evidence of active termites inside the house and made false representations on his seller's disclosure form. In their petition, the Schultzes claimed these actions constituted fraud and violated the Texas Deceptive Trade Practices—Consumer Protection Act. In a trial before the court without a jury, Fernandez responded to the allegations stating he had no knowledge of any termite activity either inside or outside the house until the inspector hired by the Schultzes discovered termites on the exterior. Once

he was informed of the termites on the exterior, he took it upon himself to attempt to correct the problem.

Fernandez denied that Nova told him there was termite damage inside the house and he further denied telling Nova to cover up the damage. According to Fernandez, Nova's testimony against him was in retribution for being fired. Fernandez claimed he stopped giving Nova work because Nova was stealing from him. Fernandez also presented evidence that any "cover up" of active termites would have required constant maintenance. An inspector testifying on Fernandez's behalf stated that a freshly painted house with active termites will start showing signs of termite infestation again within twenty-four hours.

After taking the case under advisement, the trial court signed a judgment in favor of the Schultzes. Fernandez filed a motion for new trial, which was overruled by operation of law.[1] This appeal ensued.

## II.

■ On appeal, Fernandez presents four issues for us to consider. First, Fernandez argues there is no evidence to show that he knowingly violated the Texas Deceptive Trade Practices—Consumer Protection Act. Specifically, Fernandez contends there is no evidence to show he had any knowledge of termites inside the house before he signed the seller's disclosure form.[2] In reviewing a contention of no evidence to support a trial court's finding, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595

S.W.2d 486, 488 (Tex.1979). If there is more than a scintilla of evidence to support the finding, it must be upheld. *Id.*

■ To recover under the DTPA, the Schultzes were required to show that Fernandez engaged in false, misleading, or deceptive acts. *See* TEX. BUS. & COM.CODE ANN. § 17.50(a)(1) (Vernon Supp.2000). The acts alleged in their petition include making material misrepresentations on the seller's disclosure form and covering up existing termite damage in the house. To prove their allegations, the Schultzes presented the testimony of an independent inspector who stated there was clear evidence of termite damage inside the house as early as April 1995. Fernandez admitted he was familiar with the signs of termite infestation and that he toured the house on at least two occasions before he purchased it in September 1995. Thus, the record contains circumstantial evidence that Fernandez was aware of the presence of termites inside the house before he signed the seller's disclosure form. *See Liptak v. Pensabene*, 736 S.W.2d 953, 957 (Tex.App.-Tyler 1987, no writ).

The Schultzes also presented evidence that Fernandez was told directly by one of his contractors, Nova, about active termites inside the house during the time period in which the house was being repaired. According to Nova, Fernandez gave him instructions to continue making cosmetic repairs to the house, effectively covering over any signs of termite damage. Nova replaced sheetrock that had been destroyed by the termites and purchased paint for the house approximately two weeks before Fernandez signed the seller's disclosure form.

1. We note that the trial court signed an order purporting to grant Fernandez's motion for new trial on May 5, 1999. Because this order was signed outside the trial court's plenary jurisdiction, it is void and of no effect. *See* TEX R. CIV. P. 329b(c).

2. Fernandez states in his brief that a seller's disclosure form "should not be a basis for a

DTPA case." Fernandez fails to support this statement with either argument or authority and, therefore, we do not address the merits of the issue. Furthermore, recent case law has concluded that such forms may give rise to DTPA claims. *See Kessler v. Fanning*, 953 S.W.2d 515, 519–20 (Tex.App.-Fort Worth 1997, *no pet.*)

Based on the foregoing, we conclude there is more than a scintilla of evidence to support the trial court's findings. Circumstantial evidence shows Fernandez may have known about the termites inside the house as early as April 1995. The direct evidence shows Fernandez was specifically told about termites in the house sometime in September or October and that he ordered cosmetic repair work to continue, thus covering up signs of their presence. Although there is no evidence of a specific date when Fernandez learned about the termites, the evidence indicates that it was well before the repairs on the house were completed. Gavin Schultz testified that by the time he saw the house all the remodeling had been done. Because the seller's disclosure form was signed only two days before Fernandez entered into the earnest money contract with the Schultzes, the trial court could reasonably infer that Fernandez was aware of the termites at the time he signed the disclosure form. Accordingly, Fernandez's contention that there is no evidence to support a finding of false, misleading, or deceptive acts is without merit. *See Kessler v. Fanning*, 953 S.W.2d 515, 521–22 (Tex.App.-Fort Worth 1997, no pet.) (evidence sufficient to show improper drainage existed when house was sold and that sellers were aware of the condition).

Fernandez argues in the alternative that, even if he made material misrepresentations or engaged in deceptive acts, his actions were not a producing cause of damages to the Schultzes. Relying on this Court's opinion in *Dubow v. Dragon*, 746 S.W.2d 857 (Tex.App.-Dallas 1988, no writ), Fernandez contends the Schultzes' procurement of a professional inspection was a new and independent basis for the purchase of the property. Fernandez's reliance on *Dubow* is misplaced.

In *Dubow*, the prospective buyers of a home hired an independent inspector to evaluate the home's condition. *Id.* at 858–59. The inspection revealed several existing problems and potential problems including the need for foundation repairs. *Id.* After receiving the report, the buyers had estimates prepared for correcting the problems and renegotiated the purchase price to lower it by $17,500. *Id.* at 859. The contract of sale was also modified to include the following language:

> After careful inspection of the house, and with professional opinions, [w]e feel that the house will need extensive ongoing maintenance because of the site positioning, foundation and drainage. See attached inspection report. We will take the home as is, WITH ALL CONTINGENCIES REMOVED. (emphasis in original).

*Id.* After taking possession of the house, the buyers encountered further problems with the home's foundation and roof and sued the sellers for failing to disclose their knowledge of the home's condition. *Id.*

Based on the facts presented in *Dubow*, this Court concluded that "the [buyers'] 'careful' inspection of the house's condition constituted a new and independent basis for the purchase which intervened and superseded the [sellers'] alleged wrongful act." *Id.* at 860. But the crucial fact in *Dubow* was not the buyers' procurement of an independent inspection; it was their express and exclusive reliance on the "professional opinions" they received to renegotiate the sales contract that resulted in the sale of the house. *Id.; see also O'Hern v. Hogard*, 841 S.W.2d 135, 138 (Tex.App.-Houston [14th Dist.] 1992, no writ). In this case, there is no evidence that the Schultzes relied solely on the opinion of their inspector in making their decision to purchase the house. Also, the contract here was never renegotiated in reliance on the inspection.[3] Indeed, the testimony shows the Schultzes' decision to buy the property would have been materi-

---

**3.** Fernandez argues in his brief that the parties in this case renegotiated the contract "through their actions." Once again, Fernandez does not support his statement with any argument or authority, and we do not address the issue on the merits.

ally affected if Fernandez had told them on his seller's disclosure form about the extensive termite damage and active termites inside the home.

█ Although it may be true that their inspector's failure to discover the termites inside the house was a producing cause of the Schultzes' damages, there nevertheless may be more than one producing cause of damages in a case. *Kessler,* 953 S.W.2d at 519. Here, Fernandez's failure to disclose his knowledge of the termites was also a producing cause of the Schultzes' damages. Had Fernandez informed the Schultzes about the termites, they could have required their inspector to look more deeply for signs of termite damage. Furthermore, the evidence shows that Fernandez actively concealed the presence of the termites, thus making it more difficult for the inspector to discover them. Accordingly, we conclude that the Schultzes' procurement of an independent inspection did not supersede Fernandez's actions as a producing cause of damages.

█ Finally, Fernandez argues the trial court should not have held him liable for all the actual damages claimed by the Schultzes because they failed to mitigate their losses. According to Fernandez, the Schultzes, instead of spot treating the house, should have had it fully treated for termites when they first discovered the swarm inside their home in the spring of 1996. Fernandez contends that much of the termite damage for which the Schultzes sought recovery occurred between the spring of 1996 and the spring of 1997 and, therefore, is attributable to their own mistake.

It is well established that a plaintiff's recovery of damages may be limited by a failure to reasonably mitigate losses. *See Gunn Infiniti, Inc. v. O'Byrne,* 996 S.W.2d 854, 857 (Tex.1999); *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997). Fernandez failed to show, however, that the Schultzes did not act reasonably in their attempts to cure the termite problem when they first discovered it. Because the Schultzes were not informed of the preexisting termite problem inside the house, they could have reasonably concluded in 1996 that the termite activity was limited to the area in which they saw the swarm and a spot treatment would be sufficient to cure the problem. Fernandez himself, who had experience with termite damage, testified he ordered only a spot treatment done on the house when the Schultzes' inspector located termites on the exterior. Based on the evidence presented, we cannot conclude the trial court's award of damages was erroneous.

Because of our resolution of the foregoing issues, it is unnecessary for us to address Fernandez's complaint that the trial court erred in failing to award him attorney's fees.

We affirm the trial court's judgment.