02-12-050-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00050-CV

 

 


 
 
 Helmut
 Volmich and Petra Volmich
  
 v.
  
 Richard
 Braden Neiman and Traci L. Neiman                                           
 
 
 §
  
 §
  
 §
  
 §
  
 
 
 From the 30th District Court
  
 of
 Wichita County (167,840-A)
  
 March
 14, 2013
  
 Opinion
 by Justice Gardner
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

          It
is further ordered that appellants Helmut Volmich and Petra
Volmich
shall pay all costs of this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

By_________________________________

   
Justice Anne Gardner  

 

 

 

 

 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00050-CV

 

 


 
 
 Helmut Volmich and Petra Volmich
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Richard Braden Neiman and Traci L. Neiman
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 30th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellants
Helmut and Petra Volmich appeal the trial court’s summary judgment in favor of
Appellees Richard Braden Neiman and Traci L. Neiman.  The Volmiches contend in
two issues that the trial court erred by granting summary judgment because the
“as-is” clause in the parties’ sale contract does not as a matter of law defeat
their affirmative claims or establish the Neimans’ affirmative defenses.  We
affirm.

II.  Factual
and Procedural Background

The
Neimans, as part of the process of listing their home for sale, executed a
Seller’s Disclosure Notice concerning the home’s condition on February 11,
2005.  The Neimans moved from the property in approximately May 2005 but kept
the home listed for sale.

In
February 2006, the Neimans entered into a contract with the Volmiches for the
sale of the home.  Mr. Volmich had viewed the property on multiple occasions
with his realtor before making an offer to purchase the property.  As part of
the contract, the Volmiches had the unrestricted right to terminate the
contract during a ten-day period.  The ten-day termination period was extended
an additional three days by agreement of the parties.

In
the interim, Mr. Volmich hired Accurate Inspections to conduct an inspection of
the home.  Don Crook conducted the inspection on February 19, 2006.  The
inspection report stated that the roof covering was “not functioning or in need
of repair”; that the roof showed signs of previous repairs, which may have been
the location of prior leaks; that there was moisture-related damage to the
plywood decking; that there were moisture stains observed on the “back side of
the roof decking/framing”; and that the interior and exterior walls were “not
functioning or in need of repair.”  The report also stated that there were
moisture stains on the upper laundry closet wall that appeared to be the result
of a possible water heater leak, that the walls showed a substantial increase
in moisture content in the stained area, that there was moisture-related
deterioration around the front plant-room windows and at the base of the garage
door frame, and that the ceilings and floors were “not functioning or in need
of repair.”  Finally, the report stated that moisture stains on the ceiling in
the garage mechanical room appeared to be the result of a previous roof leak.

The
parties closed on the property on March 28, 2006.  On February 8, 2008, the
Volmiches filed suit against the Neimans, Andy Lundgren, and Domain Real Estate
Services, Inc.[2]  In the lawsuit, the
Volmiches alleged that the Neimans (1) failed to disclose information
concerning the real property that was known at the time of the transaction; (2)
breached an implied warranty that the premises would be in good condition as
represented; (3) negligently marketed and sold the real property; (4) breached
an implied warranty of merchantability; (5) failed to disclose defects in the
property; and (6) breached their contract.

On
September 16, 2011, the Neimans filed a traditional motion for summary judgment.
 The Neimans first raised the affirmative defense of estoppel by contract,
asserting that the Volmiches contractually accepted the property “as is” at the
time of sale, thereby waiving the right to claim alleged damages.  The Neimans
also raised the affirmative defense of waiver, arguing that the Volmiches had hired
independent inspectors and had relied on the inspectors’ professional judgment
and not on the Neimans’ representations.  Lastly, the Neimans moved for summary
judgment on each of the Volmiches’ claims.  The Neimans asserted that because
the Volmiches had obtained their own inspection that disclosed the problems the
Volmiches later complained about, the inspection superseded any alleged
wrongdoing on the Neimans’ part.

In
their response to the motion for summary judgment, the Volmiches asserted that
the sales contract did not contain “as is” language and that the contractual
clause at issue was predicated upon the Neimans’ truthful disclosure.  The
Volmiches also asserted that reliance on an independent inspection was not
enough to constitute a new and independent basis for the purchase of the home
and did not supersede the Neimans’ non-disclosure.  The Volmiches finally
asserted that all of the alleged defects were not listed in the inspection
report.

The
trial court granted the Neimans’ motion for traditional summary judgment on
November 2, 2011.  The trial court’s order reflects that it granted the
Neimans’ motion for summary judgment in its entirety, stating that there was no
genuine issue of material fact as to the Neimans’ affirmative defenses of
estoppel by contract and waiver, that the Neimans were entitled to summary
judgment thereon, and that the Neimans disproved at least one element of each
of the Volmiches’ claims.  Only the Volmiches’ fraudulent inducement and DTPA
claims are at issue in this appeal.

III.
 Standard of Review

We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim,
315 S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the
light most favorable to the nonmovant, crediting evidence favorable to the
nonmovant if reasonable jurors could, and disregarding evidence contrary to the
nonmovant unless reasonable jurors could not.  Mann Frankfort Stein &
Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We
indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.  20801, Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A
defendant who conclusively negates at least one essential element of a cause of
action is entitled to summary judgment on that claim.  Frost Nat’l Bank v.
Fernandez, 315 S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P.
166a(b), (c).  Also, a defendant is entitled to summary judgment on an
affirmative defense if the defendant conclusively proves all the elements of
the affirmative defense.  Frost, 315 S.W.3d at 508–09; see Tex.
R. Civ. P. 166a(b), (c).  To accomplish this, the defendant-movant must present
summary judgment evidence that conclusively establishes each element of the
affirmative defense.  See Chau v. Riddle, 254 S.W.3d 453, 455 (Tex.
2008).

IV. 
Discussion

The
Volmiches present two issues on appeal.  They inquire in their first issue
whether a “boiler-plate ‘as-is’ clause” supersedes a seller’s nondisclosure
when the buyer relies upon an independent inspection.  In their second issue,
they ask whether a “boiler-plate ‘as-is’ clause” conclusively establishes
estoppel by contract and waiver as affirmative defenses when a party is
fraudulently induced to enter a contract because of nondisclosure of material
facts.  Because these issues are interrelated under the circumstances of this case,
we discuss them together.

The
parties used a standard contract form prepared by the Texas Real Estate
Commission (TREC) for the transaction.  In the contract, the Volmiches
contractually bound themselves to accept the property “in its present
condition.”  The relevant contract provision states:

ACCEPTANCE OF PROPERTY CONDITION:
Buyer accepts the Property in its present condition; provided Seller, at Seller’s
expense, shall complete the following specific repairs and treatments: treat
for termites if inspection deems necessary.

Texas
courts have interpreted contract language stating “in its present condition” to
be an agreement to purchase the property “as is.” See Cherry v. McCall,
138 S.W.3d 35, 39 (Tex. App.—San Antonio 2004, pet. denied) (construing “in its
present condition” as an “as is” agreement); Larsen v. Carlene Langford
& Assocs., Inc., 41 S.W.3d 245, 251 (Tex. App.—Waco 2001, pet. denied)
(construing to be “as is” certain contract language stating that “[b]uyer
accepts the Property in its present condition. Buyer shall pay for any repairs
designated by a lender”); Fletcher v. Edwards, 26 S.W.3d 66, 75 (Tex.
App.—Waco 2000, pet. denied)  (construing “in its present condition” in earnest
money contract to be an agreement to purchase the property “as is”); Smith
v. Levine, 911 S.W.2d 427, 431 (Tex. App.—San Antonio 1995, writ denied)
(construing “in its present condition” to be an agreement to purchase the
property “as is”); see also Sims v. Century 21 Capital Team, Inc., No.
03-05-00461-CV, 2006 WL 2589358, at *2 (Tex. App.—Austin Sept. 8, 2006, no
pet.) (mem. op.) (construing “in its current condition” as the plain-English
equivalent to “as is”).

A
valid “as is” agreement prevents a buyer from holding a seller liable if the
thing sold turns out to be worth less than the price paid.  Prudential Ins.
Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995). 
When considering the enforceability of an “as is” clause, courts should
consider the totality of the circumstances, including (1) the sophistication of
the parties and whether they were represented by counsel, (2) whether the
contract was an arm’s length transaction, (3) the relative bargaining power of
the parties and whether the contractual language was freely negotiated, and (4)
whether that language was an important part of the parties’ bargain as opposed
to being a “boilerplate” provision.  Id. at 162.

In
this case, both parties were represented by real estate agents.  Additionally,
although the Volmiches are German citizens, Mr. Volmich had worked as a project
manager for wind farms in both Idaho and Texas before deciding to purchase a
home in Wichita Falls.  Neither party was represented by counsel, but the
circumstances do not suggest any disparity of bargaining power that would
affect the enforceability of the “as is” clause.  Indeed, although the “as is”
language was contained within the standard TREC contract form, the parties
negotiated that specific part of the sales contract by adding that the Neimans
would pay to have the property treated for termites if the inspection revealed
the need for such a treatment.  The parties had also previously negotiated to
extend the initial ten-day termination period for an additional three days.  The
totality of the circumstances therefore leads us to conclude that the “as is”
clause in this contract is enforceable as an arm’s length transaction between
parties with equal bargaining strength.  See Larsen, 41 S.W.3d at 252.

Although
the clause is enforceable standing alone, the Volmiches are not bound by the
“as is” clause if they were induced into the contract because of a fraudulent
representation or concealment of information by the Neimans.  See Prudential,
896 S.W.2d at 162.  A party claiming fraud in the inducement must
demonstrate that: (1) the defendant made a representation to the plaintiff; (2)
the representation was material; (3) the representation was false; (4) when the
defendant made the representation, the defendant (a) knew the representation
was false; or (b) made the representation recklessly, as a positive assertion
with the intent that the plaintiff act on it; (5) the defendant made the
representation with the intent that the plaintiff act on it; (6) the plaintiff
relied on the representation; and (7) the representation caused the plaintiff
injury.  Exxon Corp. v. Emerald Oil & Gas Co., 348 S.W.3d 194, 217
(Tex. 2011) (op. on reh’g).

The
summary judgment evidence establishes that the Neimans executed the Seller’s
Disclosure Notice on February 11, 2005, and that they indicated on the form
that they were not aware of any roof defects or malfunctions.  The summary
judgment evidence also establishes that the Volmiches and the Neimans had no direct
communication or contact prior to the closing.  Further, Mr. Volmich testified
that he reviewed the inspection report prior to the closing and prior to the
expiration of the termination period.  Mr. Volmich asserted in his deposition
that he had observed the section of the roof that had been identified in the
inspection report as having been repaired but that the leak at issue in this
case was in a different section of the roof.

Also
in the summary judgment record is deposition testimony by two witnesses, Derek
Ellis and Jeffrey Garey, who testified that they had once observed Mrs. Neiman
cleaning water from the floor of the home in October or November 2005, several
months after the Neimans had moved out of the home in May 2005.  Garey testified
that he mowed the Neimans’ yard during the six-month period before the property
sold in February 2006.  He testified that he saw Mrs. Neiman at the house
cleaning water from the hardwood floor in the area between the den and the
living room after it had rained in October or November 2005.  He testified that
that was the only time he saw water on the floor of the house prior to the sale
of the home.[3]  Garey further testified
that, on that same occasion, Mrs. Neiman asked him to make sure that the leaves
did not build up on the awning over the deck because it created a dam that
would back up and cause water to leak inside the home.[4]
 Lastly, there is evidence that a note from Mrs. Neiman was delivered to the
Volmiches after closing.  The note states in relevant part, “F.Y.I.–Make sure
to keep roof of awning over deck clean of tree debris.  The live oak tree
constantly drops old leaves [and] they will collect [and] can cause water
to leak indoors.”

Based
on this summary judgment evidence, the Volmiches argue that they are not bound
by their agreement to purchase the property “as is” because the Neimans induced
them to make the agreement by concealing the roof defects.  The Neimans respond
that they did not make any false representations, that the Volmiches were fully
aware of the home’s condition at the time of the purchase because they obtained
their own inspection, and that the inspection disclosed the problems of which
the Volmiches now complain.  The Neimans argue that if a party obtains his or
her own inspection, and if that inspection discloses the nature and extent of
the problems later complained about, the inspection provides the basis for the
purchase and supersedes any alleged wrongdoing on the seller’s part as a matter
of law.

The
Volmiches’ fraudulent inducement claim requires a showing of reliance.  Eagle
Props., Ltd. v. Scharbauer, 807 S.W.2d 714, 723 (Tex. 1990).  Texas courts
have held that when false and fraudulent representations are made concerning
the subject matter of a contract but when the person to whom they are made
conducts an independent investigation into the matters covered by the
representations before closing, it is presumed that reliance is placed on the
information acquired by such investigation and not on the representations made
to him and that he therefore cannot seek relief because the bargain later
proves unsatisfactory.  Marcus v. Kinabrew, 438 S.W.2d 431, 432 (Tex.
Civ. App.—Tyler 1969, no writ); see also Kolb v. Tex. Emprs’ Ins. Ass’n,
585 S.W.2d 870, 872 (Tex. Civ. App.—Texarkana 1979, writ ref’d n.r.e.); Lone
Star Mach. Corp. v. Frankel, 564 S.W.2d 135, 138 (Tex. Civ. App.—Beaumont
1978, no writ); M.L. Mayfield Petroleum Corp. v. Kelly, 450 S.W.2d 104,
109–10 (Tex. Civ. App.—Tyler 1970, writ ref’d n.r.e.).  “The common thread of
the decisions reaching this conclusion is that, regardless of the result of his
investigation, the buyer’s decision to undertake such an investigation
indicates that he or she is not relying on the seller’s representations about
the property.”  Bartlett v. Schmidt, 33 S.W.3d 35, 38 (Tex. App.—Corpus
Christi 2000, pet. denied).

Similarly,
the Volmiches’ DTPA claim requires proof of producing cause.  See Prudential,
896 S.W.2d at 161 (“For DTPA violations, only producing cause must be shown.”)
(citing Tex. Bus. & Com. Code Ann. § 17.50(a)).  Producing cause under the
DTPA “requires proof that an act or omission was a substantial factor in
bringing about injury which would not otherwise have occurred.”  Id.
(citing McClure v. Allied Stores of Tex., Inc., 608 S.W.2d 901, 903
(Tex. 1980)).  Texas courts have held that if a defendant can demonstrate that
a new and independent basis for the plaintiff’s cause of action exists, that
proof may negate that the defendant’s acts were the producing cause of the
plaintiff’s injury.  Bartlett, 33 S.W.3d at 39; Dubow v. Dragon,
746 S.W.2d 857, 860 (Tex. App.—Dallas 1988, no writ).  Reliance on external
assessments of the feasibility of purchasing land has been held to introduce a
new and independent cause of the buyer’s damages in several DTPA cases, thus
negating the producing cause element of a DTPA claim.  Bartlett, 33
S.W.3d at 40; Camden Mach. & Tool, Inc. v. Cascade Co., 870 S.W.2d
304, 313 (Tex. App.—Fort Worth 1993, no writ); Dubow, 746 S.W.2d at 860.

This
court has previously considered a similar case and held that an independent
inspection precluded fraud and DTPA claims as a matter of law.  See Camden,
870 S.W.2d at 311, 313.  In Camden, the summary judgment evidence
revealed that Camden sought to purchase a building from appellee Cascade
Company and agreed to take the property “as is.”  Id. at 307.  Camden
obtained an appraisal that revealed a crack in the concrete slab.  Id.
at 307–08.  Camden viewed the crack shortly after receiving the appraisal and
also noticed a two-inch crack that ran the length of the building.  Id. at
308.  Camden contacted the seller who represented that the crack was purely
cosmetic, that the crack had been previously inspected by an engineer, and that
the crack was from settling.  Id.  Camden then had contractors and a
facilities engineer inspect the crack, and received bids to repair the crack.  Id. 
After Camden unsuccessfully attempted to negotiate a price reduction, the
parties closed on the property.  Id.  Shortly after closing, the seller
sent a letter to Camden disclosing that the foundation had been repaired six
years earlier.  Id. at 308–09.

Camden
filed suit under the DTPA and for fraud, and the trial court granted summary
judgment for the seller.  Id. at 309.  Addressing Camden’s fraud claim,
this court held that when a person makes his own investigation into the facts
and knows the representations to be false, he cannot, as a matter of law, be
said to have relied upon the misrepresentations of another.  Id. at 311
(citing Laughlin v. Fed. Deposit Ins. Corp., 657 S.W.2d 477, 483 (Tex.
App.—Tyler 1983, no writ)).  This court applied similar reasoning to the
producing cause element of Camden’s DTPA claim and held that representations of
another are not the producing cause of the injury when the buyer conducts his
own investigation prior to purchasing property.  Id. at 312–13.

The
Dallas Court of Appeals similarly held that, as a matter of law, a buyer’s
inspection of a house’s condition constituted a new and independent basis for
the purchase of the property, which intervened and superseded the seller’s
alleged wrongful act.  Dubow, 746 S.W.2d at 860.  In Dubow, the
appellants sought to purchase a home from the appellees.  Id. at 858. 
The appellants obtained an inspection report that revealed several problems
with the home, they confronted the sellers, and the sellers assured them that
the home was a good home with no problems.  Id. at 858–59.  The parties
then renegotiated and modified the contract.  Id. at 859.  The appellants
subsequently sued the sellers, and the court’s producing cause inquiry focused
on whether the sellers’ statements about the home were the producing cause of
the buyers’ damages or whether the buyers’ reliance on their own inspection of
the home’s condition constituted a new and independent basis for the purchase. 
Id. at 860.  The court determined that the buyers’ reliance on the
professional opinions expressed as part of the inspection was the sole cause of
their actual damages.  Id.

Here,
the Neimans met their traditional summary judgment burden by presenting
evidence that they had no knowledge of any roof leaks, that the Volmiches
obtained and reviewed an inspection of the home before purchasing the home, and
that the sales contract contained an “as is” clause.  That evidence conclusively
proved the Neimans’ entitlement to summary judgment on the Volmiches’
fraudulent inducement and DTPA claims.  See Camden, 870 S.W.2d at 311,
313; Dubow, 746 S.W.2d at 860; see also Bartlett, 33 S.W.3d at 38–39.

Because
the Neimans met their summary judgment burden, the summary judgment burden then
shifted to the Volmiches to present evidence raising fact issues.  See Van
v. Pena, 990 S.W.2d 751, 753 (Tex. 1999) (“Once the movant produces
evidence entitling it to summary judgment, the burden shifts to the nonmovant
to present evidence that raises a fact issue.”) (citing Walker v. Harris,
924 S.W.2d 375, 377 (Tex. 1996)).  But there are at least two deficiencies in the
Volmiches’ summary judgment evidence.  First, the Volmiches have no evidence
that the Neimans knew of the alleged roof leak when they completed the Seller’s
Disclosure Notice in February 2005, meaning that there is no evidence that the
Neimans knowingly or recklessly made a false statement or failed to disclose
the existence of a roof leak when they completed the disclosure notice and that
the Volmiches did not contradict the Neimans’ evidence that they did not make a
false statement or fail to disclose a roof leak.  But even if the evidence of
the alleged roof leak in the fall of 2005—several months after the Neimans had
moved away from the home and even longer after the Neimans had completed the
disclosure notice—is evidence of a misrepresentation or failure to disclose,
the independent inspection the Volmiches commissioned and reviewed before
deciding to purchase the home supersedes, under the facts of this case, any
alleged misrepresentation or failure to disclose by the Neimans.  The
inspection revealed numerous existing or past problems with the home, including
previous roof repairs, leaks, and moisture damage and moisture-related deterioration
throughout the house.

On
this record, we are constrained to hold that the trial court did not err by
granting the Neimans’ traditional motion for summary judgment.  While the
Neimans, according to the summary judgment record, allegedly knew of the roof
leak at issue during the fall of 2005, the summary judgment evidence does not
present a genuine issue of material fact as to whether the Neimans knew of the
leak at the time they completed the Seller’s Disclosure Notice in February
2005, and the Volmiches do not argue that the Neimans had a duty to amend the
disclosure statement once they allegedly became aware of the leak in the fall
of 2005.[5]  Nor have the Volmiches,
in the face of the Neimans’ summary judgment evidence, shown that fact issues
exist as to whether they should not be bound by their contractual agreement to
purchase the house “as-is” in light of their own independent inspection of the
property.

We
do not hold that an independent inspection will always bar DTPA and fraudulent
inducement claims.  Rather, we hold only that, under the facts and
circumstances of this case, the Neimans met their traditional summary judgment
burden, and the Volmiches did not meet their burden of presenting evidence to
create genuine issues of material fact on each element of their fraudulent
inducement and DTPA claims or on an element of the Neimans’ affirmative
defenses.  We therefore hold that the trial court did not err by granting the
Neimans’ traditional motion for summary judgment, and we overrule each of the
Volmiches’ issues.

V.  Conclusion

Having
overruled each of the Volmiches’ two issues, we affirm the trial court’s
judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and MEIER, JJ.

 

DELIVERED:  March 14, 2013









[1]See Tex. R. App. P. 47.4.





[2]Andy Lundgren and Domain
Real Estate Services, Inc. were dismissed as defendants and are not parties to
this appeal.





[3]Garey also testified
that he continued to provide lawn care for the Volmiches after they had
purchased the home and that he had, after the Volmiches had purchased the home,
observed buckets and “kiddie pools” in the home in the area between the living
room and the den to catch water after it had rained.





[4]Ellis corroborated this
testimony.





[5]Because the issue of a
duty to amend the disclosure notice is not raised in the summary judgment
motion, the summary judgment response, or the parties’ briefs on appeal, we
express no opinion on the matter.