# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00545-CV

**Marlonia Ivy, Appellant**

**v.**

**Victor Garcia and Wanda Garcia, Appellees**

### FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
### NO. 17-1299-CC2-4, THE HONORABLE JOHN MCMASTER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In the suit underlying this appeal, appellant Marlonia Ivy alleges that appellees Victor Garcia and Wanda Garcia misrepresented and failed to disclose certain information in connection with Ivy's purchase of the Garcias' home. The Garcias filed a motion for summary judgment, arguing that the as-is clause in the parties' purchase contract precluded Ivy's recovery as a matter of law. After the trial court granted the Garcias' motion and signed a final summary judgment dismissing Ivy's claims, Ivy timely filed her notice of appeal in this Court. Because we conclude that a fact issue exists as to whether the as-is clause is enforceable, we reverse the summary judgment and remand the case to the trial court for further proceedings.

## BACKGROUND

On July 26, 2015, Ivy entered into a contract to purchase the Garcias' home in Williamson County (the Property), using the standard One to Four Residential Resale Contract

promulgated by the Texas Real Estate Commission. In part, the purchase contract stated that the Garcias had provided Ivy with a Seller's Disclosure Notice concerning the home's condition, as required by Section 5.008 of the Texas Property Code, and that Ivy was accepting the Property "As Is," which was defined in the contract as "the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract."

The contract also provided Ivy with an unrestricted right to terminate the contract during a ten-day "option" period, in exchange for her payment of $250. During this option period, Ivy hired Mike Larkin with Barfield Home Inspections to conduct an inspection of the Property. Larkin issued a 23-page report identifying numerous problems with the house (the Barfield Inspection Report). Among other things, that report detailed multiple roof leaks and resulting damage visible in the attic; nonfunctioning lights above the fireplace; gas leaking at the water heater, causing him to "recommend having the water heater unit serviced and further evaluated by a licensed repair person"; a loose and leaking master bathroom toilet along with "deterioration of the plywood decking under the toilet"; and improperly sealed duct lines in the heating ventilation and cooling system (HVAC), causing him to "recommend contacting a licensed HVAC contractor to address these issues and to further evaluate."

Ivy then requested, in writing, that the Garcias repair many of the issues identified in the Barfield Inspection Report, including the issues related to the roof, the HVAC system, and the electrical system. The Garcias refused to make the requested repairs but instead offered to increase the purchase price of the home by $3,500 and to pay $3,500 towards Ivy's closing costs. According to Wanda Garcia, she and her husband declined to make any of the requested repairs because they "believed that [they] were selling [their] home below its market value" and that

2

their offer, if accepted, would "free[] up some cash that Ms. Ivy would not have to pay at closing that she could use to make [the requested] repairs." Ivy accepted the Garcias' proposal and did not exercise her option to terminate the purchase contract. Instead, the parties executed an amendment to the purchase contract to reflect the agreed-to increase in the price of the Property as well as the Garcias' corresponding obligation to pay part of Ivy's closing costs. On August 24, 2015, Ivy closed on her purchase of the Property at the renegotiated price.

On August 17, 2017, Ivy filed suit against the Garcias asserting various claims related to the condition of the Property, including claims for common law fraud, violations of the Texas Deceptive Trade Practices Act (DTPA), breach of fiduciary duty, negligent misrepresentation, conspiracy, and intentional infliction of emotional distress. Common to all of Ivy's claims is the allegation that the Garcias failed to disclose certain facts or made misleading and false statements about the condition of the Property. The Garcias filed an answer generally denying all of Ivy's allegations and, later, a traditional motion for summary judgment on all of Ivy's claims.

Following a non-evidentiary hearing, the trial court granted the Garcias' motion and signed a final summary judgment dismissing all of Ivy's claims. In one issue on appeal, Ivy contends that the trial court erred in granting summary judgment in favor of the Garcias on her claims for violations of the DTPA, fraud, and misrepresentation.[1]

---

[1] In the trial court, the Garcias moved for, and the court granted, summary judgment on all of Ivy's claims. On appeal, Ivy does not contend that the trial court erred in granting summary judgment as to any claims other than her claims for DTPA violations, fraud, and misrepresentation.

3

## STANDARD OF REVIEW

We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a. In reviewing the trial court's ruling, we take as true all evidence favorable to the nonmovant, indulge every reasonable inference in the nonmovant's favor, and resolve any doubts in the nonmovant's favor. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A defendant who moves for traditional summary judgment on the plaintiff's claim must conclusively negate at least one element of the plaintiff's cause of action or conclusively establish each element of an affirmative defense to the claim. *KCM Fin.LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

## DISCUSSION

In their motion for summary judgment, and now on appeal, the Garcias assert that Ivy's claims for violations of the DTPA, fraud, and misrepresentation are defeated, as a matter of law, by the as-is clause in the parties' purchase contract and by the independent inspection conducted by Larkin at Ivy's request. In support of their argument, the Garcias cite to *Prudential Insurance Company of America v. Jefferson Associates*, 896 S.W.2d 156, 161 (Tex. 1995). In that case, the Texas Supreme Court considered the effect of an as-is clause in the context of a commercial real estate transaction and concluded that the clause precluded the buyer from recovering damages based on the seller's alleged failure to disclose potential asbestos in the building. *Id.* In reaching this conclusion, the Supreme Court recognized that a buyer who agrees

to purchase something "as is" agrees to make his own appraisal of the bargain and accept the risk that he may be wrong. *Id*. Moreover, by choosing to "rely entirely upon his own determination of the condition and value of his purchase," the buyer "removes the possibility that the seller's conduct will cause him damage." *Id.* Therefore, as a general rule, an as-is clause in a purchase contract will negate the elements of causation and reliance for any DTPA, fraud, or negligence claims relating to the value or condition of the property. *Id.*

On appeal, Ivy does not dispute that the parties' purchase contract contains an as-is clause and that, ordinarily, this would preclude her from recovering on her DTPA, fraud, and misrepresentation claims. Instead, Ivy maintains that trial court erred in granting summary judgment based on the as-is clause in this case because the Garcias fraudulently induced her into the as-is contract. As Ivy points out, a buyer is not bound to an agreement to purchase something "as is" if the agreement is a product of a fraudulent representation or concealment of information by the seller. *Id.* at 162. "A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as is,' and then disavow the assurance which procured the 'as is' agreement." *Id*. Consequently, Ivy is not bound by the as-is clause if the Garcias intended to induce her into the contract by making a fraudulent misrepresentation or by concealing information and if Ivy relied on the misrepresentation in entering into the as-is contract. *See Van Duren v. Chife*, 569 S.W.3d 176, 188 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (summarizing what buyer must show when asserting that as-is contract was procured by fraudulent inducement); *Williams v. Dardenne*, 345 S.W.3d 118, 125-126 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (explaining that fraudulent inducement is type of fraud claim and requires that elements of fraud be established "as they relate to an agreement between the parties").

5

To raise an issue of fact as to the enforceability of the as-is clause in response to the Garcias' motion for summary judgment, Ivy was required to adduce more than a scintilla of evidence to support her claim that she was fraudulently induced to purchase the Property "as is." *See Van Duren*, 569 S.W.3d at 186. In support of her argument that she was fraudulently induced into signing the as-is contract, Ivy contends that the Garcias failed to disclose known defects in the Property and that if they had disclosed these defects, she would not have entered into the as-is purchase contract. Specifically, in response to the Garcias' summary judgment, Ivy asserts that the Garcias (who had lived in the home for more than thirty years) falsely represented on the Seller's Disclosure Notice that (1) they had no knowledge of any "previous fires" when, in fact, a lightning strike in 2007 caused a fire in the laundry room; (2) they had no knowledge of any "defects or malfunctions" in the roof or of any "previous roof repairs," despite the fact that the roof was damaged in a hail storm, repaired in 2009, and continued to suffer from defects and moisture penetration; (3) they had no knowledge of any "defects or malfunctions" in the flooring, despite the presence of an active leak in the master bathroom causing damage to surrounding flooring; (4) they had no knowledge of any "defects or malfunctions" in any lighting fixtures, although the lighting fixtures around the fireplace were found to be inoperable; and (5) they had no knowledge of any encroachment on the Property when, in fact, the neighbor's fence was and currently is encroaching on the Property.

As a preliminary matter, we note that the summary-judgment record reveals that many of the defects alleged by Ivy—namely, water penetration, deterioration, and damage in the roof and attic; water penetration and damage in the master bathroom; and nonfunctioning light

6

fixtures—were specifically identified in the Barfield Inspection Report.[2] Texas courts consistently have concluded that a buyer's independent inspection precludes a showing of causation and reliance if the buyer continued to complete the purchase after the inspection revealed the same information that the seller allegedly failed to disclose. *Williams*, 345 S.W.3d at 125-26 (collecting cases); *see Lesieur v. Fryar*, 325 S.W.3d 242, 250 (Tex. App.—San Antonio 2010, pet. denied) (concluding that causation and reliance were negated by buyer's independent inspection, which contained same information about defect that sellers allegedly failed to disclose); *Dubow v. Dragon*, 746 S.W.2d 857 (Tex. App.—Dallas 1988, no writ) (same); *see also Ritchey v. Pinnell*, 324 S.W.3d 815, 819 (Tex. App.—Texarkana 2010, no pet.) (concluding that buyer's independent inspection failed to negate causation and reliance because there was no evidence that inspection revealed complained-of defects). This is particularly true when, as in this case, the buyer relies on the independent inspection disclosing the information to renegotiate the contract.[3] *Id.* To the extent Ivy suggests that she was fraudulently induced into

---

[2] The summary-judgment record includes copies of the Multiple Listing Service (MLS) listing for the Property, the Seller's Disclosure Notice, the parties' purchase contract, the Barfield Inspection Report, Ivy's written request for repairs, the purchase contract amendment, the settlement statement from closing, Ivy's affidavit, Wanda Garcia's affidavit, and the Garcias' responses to written interrogatories. *See* Tex. R. Civ. P. 166a(c) (explaining how affidavits and other evidence are made part of summary-judgment record). In addition, Ivy has attempted to file in this Court what appear to be medical records belonging to Victor Garcia. However, those records were not made a part of the record before the trial court, and the Garcias have filed a motion to strike the records on this ground. Because we agree that the medical records are not properly part of the appellate record, *see* Tex. R. App. P. 34.1 (contents of appellate record), we grant the Garcias' motion to strike.

[3] We recognize that there is a split of authority as to whether the record must show that there was a renegotiation of the purchase contract based on the defects revealed by the buyer's pre-purchase independent inspection. *Compare Dubow v. Dragon*, 746 S.W.2d 857 (Tex. App.—Dallas 1988, no writ) (holding that independent inspection negated causation and reliance because buyer relied on information from inspection to renegotiate contract), *and Ritchey v. Pinnell*, 324 S.W.3d 815, 819 (Tex. App.—Texarkana 2010, no pet.) (agreeing with approach

7

entering into the as-is contract by the Garcias' failure to disclose defects that were later identified in the Barfield Inspection Report, we conclude that these nondisclosures, as a matter of law, cannot form the basis of a fraudulent-inducement claim or, consequently, create a fact issue as to the enforceability of the as-is clause. *See Lutfak v. Gainsborough*, No. 01-15-01068-CV, 2017 Tex. App. LEXIS 4554, *18-19 (Tex. App.—Houston [1st Dist.] May 18, 2017, no pet.) (mem. op.) (concluding that buyer failed to produce legally sufficient evidence that he was fraudulently induced into signing as-is contract because allegedly concealed defects were revealed in inspection obtained by buyer). Moreover, Ivy's claims for DTPA violations, fraud, and misrepresentation, to the extent they are based on the defects identified by the Barfield Inspection Report, are defeated as a matter of law. *See Lesieur*, 325 S.W.3d at 250 (concluding that summary judgment was proper on buyer's claims because buyer obtained same information about defect from independent inspection); *Dubow*, 746 S.W.2d at 860-61 (concluding that summary judgment was proper on buyers' claims because record established that buyers relied on independent inspection and not on sellers' misrepresentations).

Not all of the defects alleged by Ivy, however, were revealed by the Barfield Inspection Report. *See Ritchey*, 324 S.W.3d at 819-20 (concluding that pre-purchase home inspection did not negate reliance and causation because there was no evidence that inspection revealed whether proper permit was obtained). The Barfield Inspection Report did not determine whether the Property had previously sustained a fire or whether the neighbor's fence is

---

in *Dubow*), *with Lesieur v. Fryar*, 325 S.W.3d 242, 250 (Tex. App.—San Antonio 2010, pet. denied) (concluding that independent inspection that revealed same information negated causation and reliance and rejecting assertion that evidence of renegotiation of contract was required). In this case, even under the more stringent standard adopted by the Dallas Court of Appeals, the elements of causation and reliance are negated. Accordingly, we need not decide this issue in this case. *See* Tex. R. App. P. 47.1.

encroaching onto the Property. The issue, then, is whether the as-is clause in the purchase contract defeats these claims as a matter of law or, instead, whether Ivy met her burden to show that a fact issue exists concerning the clause's enforceability. *See Prudential Ins.,* 896 S.W.2d at 161-62. That is, the issue is whether Ivy presented legally sufficient evidence to support her claim that she was fraudulently induced to agree to the as-is contract either by the Garcias' failure to disclose a previous fire or by their failure to disclose an encroachment on the Property.

In response to the Garcia's motion for summary judgment, Ivy attached a copy of a document procured by subpoena from the Jollyville Fire Department, documenting an incident at the Property on March 12, 2007. According to the report, the Jollyville Fire Department was dispatched to the Property in response to what was "determined to be a Building Fire" after the home was "hit by lightning w/ nothing showing—investigating (no power to the residence)." The report by the responder states, "Met [with] owner who stated there was a small fire behind the washer and was extinguished . . . overhauled a small area of the wall [with] nothing found, as well both sections of the attic were checked [with] nothing found." In the Seller's Disclosure Notice, the Garcias were required to disclose whether they were aware of any previous fires, and the Garcias responded by marking "No." In her affidavit, Ivy states that if the fire had been disclosed by the Garcias, she would not have entered into an as-is purchase contract. Viewing this evidence in the light most favorable to Ivy, as we must, we conclude that Ivy met her burden to adduce more than a scintilla of evidence to support her claim that she was fraudulently induced to purchase the Property "as is."[4] *See Knott*, 128 S.W.3d at 215; *Ritchey v. Pinnell*,

---

[4] As previously discussed, Ivy also contends that she was fraudulently induced into the as-is contract by the Garcias' failure to disclose that a neighbor's fence was encroaching on the Property. In response, the Garcias assert that the only evidence offered by Ivy to support this claim (a written letter purportedly drafted by Ivy's neighbor) was struck by the trial court and

357 S.W.3d 410, 413 (Tex. App.—Texarkana 2012, no pet.) (because evidence suggested that seller was aware that repairs violated building permit and code requirements and that seller failed to disclose same, buyer met burden to create fact issue as to enforceability of as-is contract). Because a genuine issue of material fact exists as to the enforceability of the as-is clause with respect to Ivy's remaining DTPA, fraud, and misrepresentation claims, the trial court erred in granting summary judgment on these claims.

## CONCLUSION

We reverse that portion of the trial court's judgment dismissing Ivy's claims for DTPA violations, fraud, and misrepresentation and remand to the trial court for further proceedings consistent with this opinion.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Reversed and Remanded

Filed: August 9, 2019

---

that Ivy has failed to raise a genuine issue of material fact on this issue. Because we conclude that Ivy presented sufficient evidence that she was fraudulently induced into entering the as-is contract based on the Garcias' failure to disclose a previous fire and reverse on this basis, we need not decide this issue. *See* Tex. R. App. P. 47.1.